# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES B.,**[1] | Case No. 6:17-cv-1888-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

John E. Haapala Jr., HAAPALA LAW, 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jeffery E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

James B. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for Disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff filed an application for DIB on December 16, 2013, alleging disability beginning on January 30, 2013. AR 18. Plaintiff was born in February 1969 and was 43 years old as of the alleged disability onset date. AR 65. He alleged disability due to type 1 diabetes, sleep apnea, hypertension, migraines, and asthma. *See id.* The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 18, 65, 76. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 38-63, 103-04. In a decision dated September 9, 2016, the ALJ found Plaintiff not disabled from December 16, 2013, through the date of decision. AR 18-32. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6; *see also* 20 C.F.R. § 422.210(a). Plaintiff seeks judicial review of that decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),

404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled.

*Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found

Plaintiff had not engaged in substantial gainful activity since January 30, 2013, the alleged onset

date. The ALJ additionally found that Plaintiff met the insured status requirements of the Act

through June 30, 2019. AR 20. At step two, the ALJ found that Plaintiff had the following severe

impairments: diabetes mellitus, type II; sleep apnea; anxiety; depression; and obesity. *Id.* At step

three, the ALJ found that Plaintiff did not have an impairment or combination of impairments

that met or equaled the severity of one of the specific impairments listed in the regulations.

AR 31.

The ALJ next determined Plaintiff's RFC and found he could perform sedentary work, with the following limitations:

> [H]e can perform one or two or three-step simple tasks. He would need to deal primarily with things and not people. He can perform work that does not require interaction with the public. He must be allowed to alternate between sitting and standing every hour without leaving the work area.

AR 23.

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. AR 31. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Specifically, the ALJ found that Plaintiff could perform such representative occupations as: table worker, lens inserter, and assembler. AR 32. Accordingly, the ALJ found that Plaintiff was not disabled from January 30, 2013, through the date of the decision, September 9, 2016. AR 32.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that Plaintiff was not disabled. He argues that the ALJ erred in making that determination by: (A) failing to provide clear and convincing reasons to discount Plaintiff's subjective symptoms; (B) improperly rejecting the medical source opinion evidence; and (C) failing to provide germane reasons to discount lay witness evidence.

**A.  Plaintiff's Subjective Symptoms Allegations**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of

an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2017 WL 5180304 (republished Oct. 25, 2017). SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *2; *see also Trevizo*, 871 F.3d at 678 n.5. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence and individual's statements about

the intensity, persistence, and limiting effects of symptoms statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *7. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, reject testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing, Plaintiff testified that his anxiety, depression, and headaches were his primary obstacle to working. AR 44-45. Plaintiff explained that when he has panic attacks, he loses his breath and his vision becomes distorted. AR 49. He testified that light and sound can trigger "minor" headaches, and that he has "major" headaches every other month, which last all day. AR 51-52. In his function report, Plaintiff indicated that his (1) diabetes causes his legs to swell; (2) obesity limits his mobility; (3) back pain limits lifting; (4) depression interferes with his sleep; and (5) sleep apnea causes fatigue. AR 178.

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" AR 24. In applying the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.*

Plaintiff asserts the ALJ merely summarized the evidence supporting the RFC and therefore failed adequately to identify inconsistencies, running afoul of established Ninth Circuit precedent. Plaintiff cites to *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1102-03 (9th Cir. 2014) and *Brown-Hunter v. Colvin*, 806 F.3d 487, 501 (9th Cir. 2015). Plaintiff is correct that an ALJ must do more than "simply state[] her non-credibility conclusion and then summarize[] the medical evidence supporting her RFC determination," *Brown-Hunter*, 806 F.3d at 494 (alterations in original), and instead must "specifically identify the testimony [s]he found not credible," *Treichler*, 775 F.3d 1102-03 (citation and quotation marks omitted) (alteration in original).

Contrary to Plaintiff's assertion, however, *Treichler* and *Brown-Hunter* are inapposite. Unlike the ALJ decisions at issue in those cases, the ALJ here did not make a general conclusory statement that Plaintiff's testimony was not credible. Rather, the ALJ provided a detailed and cogent summary of Plaintiff's testimony and the medical evidence and specifically highlighted areas where the medical evidence conflicted with the degree of symptoms alleged. AR 24, 27; *see also Burrell*, 775 F.3d at 1138 ("To support a lack of credibility finding, the ALJ was required to point to *specific facts* in the record." (emphasis in original; ellipses omitted) (citing

*Vazquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009))).[2] Nevertheless, although neither *Treichler*

nor *Brown-Hunter* compel reversal, the ALJ was still required to provide clear and convincing

reasons to reject Plaintiff's symptom allegations.

The Commissioner advances three rationales in support of the ALJ's finding:

(1) Plaintiff's activities of daily living were inconsistent with his allegations of disablity;

(2) Plaintiff's mental health symptoms were controlled with medications and counseling; and

(3) limited objective medical evidence supported the severity of Plaintiff's alleged limitations.

### 1. Activities of Daily Living

The Commissioner contends the ALJ properly rejected Plaintiff's subjective symptom

testimony because it was inconsistent with his daily activities. Activities of daily living can form

a basis to reject subjective symptom testimony where the activities flatly contradict claimed

limitations. *See Orn*, 495 F.3d 639. The ALJ, however, did not in fact make such a finding.

After listing Plaintiff's modest daily activities, the ALJ concluded Plaintiff's "reported abilities

are consistent with the limitations identified in the residual functional capacity." AR 28. Thus,

the Court may not affirm the Commissioner's *post hoc* arguments regarding a purported conflict

between Plaintiff's activities and his alleged symptoms because the ALJ did not articulate such a

rationale. *See Bray*, 554 F.3d at 1225 (reviewing courts must "review the ALJ's decision based

on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that

attempt to intuit what the adjudicator may have been thinking").

---

[2] Plaintiff asserts that "the ALJ did not summarize the medical evidence accurately" and offers his own interpretation of the medical evidence arguing the objective evidence supports his allegations regarding the severity of his mental impairments. The Court has reviewed the ALJ's summary of the medical evidence as well as Plaintiff's preferred interpretation of that evidence and finds that the ALJ's summary is supported by substantial evidence. Moreover, it is ultimately the province of "the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler,* 775 F.3d at 1098).

## 2. Medication and Counseling

The ALJ found that medication and counseling reduced Plaintiff's symptoms of depression and anxiety. AR 24-27. Impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits. *See Moore v. Berryhill*, No. 6:15-cv-2418-SI, 2017 WL 1193723, at *8 (D. Or. Mar. 30, 2017) (citing *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). In the context of mental health, however, "[r]eports of 'improvement' . . . must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms[.]" *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ discussed Plaintiff's June 2013 presentation of insomnia and chest pain associated with anxiety while Plaintiff was "under extreme stress" during a domestic dispute with his ex-wife involving his stepchild. AR 25 (citing AR 285). The ALJ, however, noted that by September 2013 Plaintiff denied anxiety, depression, suicidal ideation, and sleep problems. AR 25 (citing AR 267). The ALJ's decision chronicled Plaintiff's treatment history throughout 2014 and although he reported a loss of motivation and difficulty sleeping, the ALJ highlighted that Plaintiff's mental status examinations were largely normal. AR 25-27. By April 2015, the ALJ noted Plaintiff's depression symptoms had improved with medication. AR 26 (citing AR 507). By October 2015, Plaintiff continued to report depression and racing thoughts, but his "medication [was] helping." AR 26 (citing AR 510-11). In January 2016, Plaintiff reported anxiety and panic attacks with fluctuating intensities, but that he had not taken his psychotropic medications for "about two months." AR 26 (citing AR 222-23). Three months later, in March 2016, the ALJ noted Plaintiff reported improvement after "being back on his meds." AR 26 (citing AR 530). During that appointment, his treating mental health physician

opined that Plaintiff's medication "had a significantly positive impact on his mood and anxiety." AR 26 (citing 530-31).

The ALJ here did not "pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding [Plaintiff was] capable of working." *Garrison*, 759 F.3d at 1017 (citation omitted). Rather, the ALJ reviewed the evidence in context and applied the relevant factors outlined in SSR 16-3p, including examining the "[f]actors that precipitate[d] and aggravate[d]" Plaintiff's mental health impairments, the "type, dosage, [and] effectiveness" of his medications, as well as "[t]reatment, other than medication" Plaintiff received. SSR 16-3p at *8; *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (noting that evidence must be reviewed in the "context of the overall diagnostic picture"). The ALJ's finding that Plaintiff's symptoms were effectively managed by medication and counseling was a clear and convincing reason to discount the severity of limitations reported by Plaintiff.

### 3. Objective Evidence

The ALJ also found that the objective evidence was inconsistent with Plaintiff's testimony regarding the severity of his symptoms of depression and anxiety disorders. As the Commissioner correctly concedes, subjective symptom testimony may not be wholly rejected solely based on a lack of corroborating objective medical evidence; however, it is still a relevant factor in determining the severity of a claimant's symptoms in conjunction with other factors. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ here appropriately considered the inconsistencies between Plaintiff's alleged limitations and the objective medical evidence. *See Rollins*, 261 F.3d at 857; *see also* SSR 16-3p at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms"). The ALJ's interpretation was rational and sufficiently specific to meet the clear-

and-convincing standard; in such cases, the Court is compelled to defer to the ALJ. *See Burch*, 400 F.3d at 680-81; *see also* SSR 16-3p.

## B.  Medical Source Evidence

### 1.  Acceptable Medical Sources

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan*, 246 F.3d at 1202. If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.; see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F. 2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another

physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the

examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may

reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating

physician when he gives specific, legitimate reasons for doing so, and those reasons are

supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995),

*as amended* (Oct. 23, 1995). Specific, legitimate reasons for rejecting a physician's opinion may

include its reliance on a claimant's discredited subjective complaints, inconsistency with medical

records, inconsistency with a claimant's testimony, and inconsistency with a claimant's

daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d

at 1042-43.

Charles Jensen M.D., Q.M.H.P. treated Plaintiff for medication management four times

between October 2014 and April 2015. AR 490, 495, 500, 506. Dr. Jensen assessed Plaintiff with

post-traumatic stress disorder and depression, resulting in "suicide attempts, limited motivation,

difficulties interacting socially and trouble maintaining concentration and attention." AR 28

(citing AR 579). In a "Medical Source Statement" regarding Plaintiff's mental impairments,

Dr. Jensen opined that Plaintiff had "marked" limitations in two broad function areas:

"concentration, persistence or pace" and "social functioning." AR 578.

The ALJ accorded little weight to Dr. Jensen's opinion. The ALJ found that the opinion

was not consistent with Dr. Jensen's findings during mental status examinations, during which

Plaintiff consistently presented with good concentration, fund of knowledge, memory,

intelligence, and orientation. AR 28-29. The ALJ found Dr. Jensen's opined "marked" limitation

that Plaintiff would struggle maintaining concentration, persistence, and pace was inconsistent

with (1) Plaintiff's mental status exams and (2) the findings of Michael R. Villanueva, Psy.D.,

which showed low average performance on intelligence testing. *Id.* The ALJ also found the opined "marked" limitation in social functioning was inconsistent with Plaintiff's (1) self-reports of amicability interacting with authority figures as well as his ability to maintain a relationship with his girlfriend and (2) calm and cooperative demeanor during examinations. *Id.* After discussing additional evidence, the ALJ ultimately found Plaintiff had "moderate" rather than "marked" limitations in the above function areas. *Id.*

Plaintiff broadly asserts that the ALJ's rejection of Dr. Jensen's opinion was not supported by substantial evidence and Plaintiff offers his own interpretation of the medical evidence in asserting that the ALJ erred in rejecting Dr. Jensen's opined "marked" limitations. It is the ALJ, however, who "is responsible for . . . resolving conflicts in the medical evidence, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

In any event, the ALJ supplied specific and legitimate reasons for rejecting Dr. Jensen's limitations. Regarding the diminished cognitive functioning limitation, the ALJ identified conflicts between Dr. Jensen's opinion and his own treatment notes. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). Regarding the social functioning limitation, the ALJ identified Plaintiff's self-reported activities that contradicted Dr. Jensen's "marked" limitation. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (finding an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion).

## 2. Non-Acceptable Medical Sources

SSR 06-03p,[3] in effect at the time Plaintiff filed his claim, defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, *available at* 2006 WL at 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw

---

[3] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 5844-01; 82 F. Reg. 15132-01.

inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider the following factors: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-03p, at *4-5. The fact that a source is an "acceptable medical source" generally entitles that source's opinions to more weight than the opinions from other medical sources. *Id.* Nonetheless, in certain instances, after applying the factors for

weighing opinion evidence, an ALJ may properly find that an opinion from a medical source

who is not an "acceptable medical source" outweighs the opinion of the "acceptable medical

source":

> For example, it may be appropriate to give more weight to the
> opinion of a medical source who is not an acceptable medical
> source if he or she has seen the individual more often than the
> treating source and has provided better supporting evidence and a
> better explanation for his or her opinion.

*Id.* Lay witness testimony regarding the severity of a Plaintiff's symptoms or how

impairments affect a Plaintiff's ability to work is competent evidence that an ALJ must take into

account. *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 918-19). "Depending on the

particular facts in a case, and after applying the factors for weighing opinion evidence, an

opinion from a medical source who is not an acceptable medical source may outweigh the

opinion of an acceptable medical source, including the medical opinion of a treating source."

SSR 06-03p, at *5 (internal quotations marks omitted).

### a.   Family Nurse Practitioner: Michael A. Sheets

Nurse Sheets[4] treated Plaintiff from at least October 2014 through February 2016.

AR 540, 545. In a "Medical Source Statement" regarding Plaintiff's physical impairments, Nurse

Sheets opined that Plaintiff had "marked" limitations in three broad function areas: "activities of

daily living," "concentration, persistence or pace," and "social functioning." AR 573. He further

opined that Plaintiff's medically related work absences would exceed five days per month from a

light or sedentary job. AR 568.

---

[4] The Court notes the spelling of Nurse Sheets' last name varies throughout the
administrative record. *Compare* AR 29 ("Mr. Sheets") *with* AR 533 ("Sheats, Michael") *and*
AR 544 ("Michael A. Sheets"). Because it is clear to the Court the various spellings refer to the
same individual, and for the sake of clarity, this opinion uses the spelling "Sheets" to refer to
both references.

The ALJ accorded little weight to Nurse Sheets' opinion and, as relevant here,[5] provided four reasons for doing so: (1) Nurse Sheets was not an acceptable medical source; (2) Nurse Sheets never performed any psychological testing that would allow him to opine as to the severity of Plaintiff's mental health impairments; (3) Nurse Sheets was not qualified to opine as to Plaintiff's mental health treatment; and (4) the opinion was based on Plaintiff's subjective complaints, which the ALJ rejected.

The ALJ's first rationale was not an independently permissible germane reason to discount Nurse Sheets' opinion. An ALJ may not reject an opinion solely on the basis that it is proffered by a non-acceptable medical source. *Lori S. v. Berryhill*, 2018 WL 4742511, at *11 (D. Or. Oct. 2, 2018); *see also Tully v. Astrue*, 2013 WL 1314197, at *7 (D. Ida. Mar. 27, 2013) ("The ALJ cannot discount the opinion of [a treating nurse practitioner] simply because it falls into the category of 'not an acceptable medical source' for some purposes.").

The ALJ, however, provided three additional rationales to reject Nurse Sheets' opinion. First, the ALJ's finding that Nurse Sheets' opinion lacked testing to support his opined limitations was a germane reason to reject the limitation. Plaintiff seemingly argues that because Nurse Sheets "observed neurological symptoms related to Plaintiff's diabetes," psychological testing was unnecessary because "Nurse sheets [sic] was aware of Plaintiff's diabetes symptoms, including numbness and paresthesia." Pl's. Br. at 13 (citing AR 540). This argument lacks merit. An ALJ may reject an opinion that is "inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228.

---

[5] Plaintiff does not challenge the ALJ's rejection of Nurse Sheets' opined physical limitations. Rather, Plaintiff's briefing seemingly takes issue with the ALJ's rejection of Nurse Sheets' opinion relating to Plaintiff's mental health symptoms, arguing that Nurse Sheets was a part of Plaintiff's mental health treatment while treating Plaintiff for his diabetes. Accordingly, the rationales discussed only relate to the ALJ's discounting of Nurse Sheets' opined mental health limitations.

Second, the ALJ's finding that Nurse Sheets was not qualified to opine as to Plaintiff's mental health limitations was a germane reason to reject the opinion. Plaintiff asserts that because Nurse Sheets worked with Plaintiff's mental health treatment provider and observed Plaintiff's symptoms first hand Nurse Sheets was qualified to opine as to Plaintiff's mental health impairments. As Plaintiff concedes, however, Nurse Sheets' treatment notes were "very brief." An ALJ may reject an opinion that is "conclusory, brief, and unsupported by the record as a whole." *Batson*, 359 F.3d at 1195; *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").[6]

Third, the ALJ's finding that Nurse Sheets' opinion was based on Plaintiff's subjective complaints, which the ALJ found inconsistent with the medical evidence, was a germane reason to reject the opinion.[7] *Cf. Morgan*, 169 F.3d at 602 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." (citation and quotation marks omitted)). The ALJ therefore provided sufficiently specific and germane reasons for assigning Nurse Sheets' opinion little weight.

---

[6] Plaintiff cites SSR 06-03p, which provides factors relevant to evaluating "other source" medical evidence, which Nurse Sheets' opinion falls under. Although the ALJ did not cite SSR 06-03p directly, the decision sufficiently touched on the relevant factors for evaluating Nurse Sheets' "other source" opinion, including the opinion's inconsistency with other evidence in the record, the lack of explanation for the extreme limitations, the provider's lack of specialty and expertise relating to mental health treatment, and other factors that refuted the opinion. *See* SSR 06-03p at * 4-5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[7] Although Plaintiff asserts that Nurse Sheets "observed Plaintiff first hand" and "sent Plaintiff out for laboratory studies and diagnostic imaging," such evidence could potentially relate to the ALJ's rejection of Nurse Sheets' opined physical limitations. Plaintiff, however, does not meaningfully challenge the ALJ's rejection of those limitations.

## C.  Lay Witness Testimony

As an initial matter, the Court notes that although Plaintiff asserts in the "Statement of Issues" section of his brief that the ALJ erred "by failing to reject[] Plaintiff's friends and families' statements for less than germane reasons," the remainder of his briefing is devoid of any further argument on the issue. For that reason alone, the Court may reject the assignment of error as courts "review only issues which are argued specifically and distinctly in a party's opening brief," and a "bare assertion of an issue does not preserve a claim." *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). For her part, the Commissioner responded to Plaintiff's bare assertion and argues that the ALJ properly rejected the testimony for multiple germane reasons. Although expressly permitted to do so by local rule, Plaintiff's counsel elected not to file a reply to the Commissioner's arguments. LR 7-1(e).

Plaintiff does not articulate what third party testimony he believes the ALJ erroneously rejected. The administrative record contains a single third party function report from Brenda O. (AR 194-201), and no other "friend or family" testified at the hearing. Accordingly, the Court assumes Plaintiff sought to challenge the ALJ's rejection of Brenda O.'s testimony. A review of the ALJ's decision reveals the ALJ supplied at least one sufficiently germane reason to reject Brenda O.'s testimony. The ALJ found Brenda O.'s statements "largely echoed [Plaintiff's] allegation." AR 30; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (where an ALJ has provided a clear and convincing reason for rejecting a claimant's subjective symptom testimony, an ALJ may reject similar lay witness testimony). The ALJ provided a sufficiently germane reason for rejecting Brenda O.'s testimony.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 5th day of November, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge